## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| MARKEL INSURANCE COMPANY, : | |
| : | |
| Plaintiff, : | Civil Action No.: |
| : | |
| vs. : | |
| : | **COMPLAINT FOR** |
| PETROV BALLET SCHOOL, LLC; EUGENE : | **DECLARATORY JUDGMENT** |
| PETROV; KAREN BOSCH PETROV; SUSAN : | |
| SOROTA; CRISTINA TUMMILLO; ELIZABETH : | |
| FLYNN; STEPHANIE BUESSER; STEPHANIE : | |
| SOROTA; and EMMA MUSCARELLE, : | |
| : | |
| Defendants. : | |

Plaintiff, Markel Insurance Company ("MIC"), by and through its undersigned counsel, Hinshaw & Culbertson LLP, hereby alleges in support of its Complaint for Declaratory Judgment against the defendants as follows:

## <u>INTRODUCTION</u>

1.     MIC brings this insurance coverage action to obtain a declaration that it had no obligation to defend or indemnify defendants Petrov Ballet School, LLC ("Petrov Ballet" or the "School"), Eugene Petrov ("Petrov"), Karen Bosch Petrov, and Susan Sorota (collectively, the "Underlying Defendants") for claims by Cristina Tummillo, Elizabeth Flynn, Stephanie Buesser, Stephanie Sorota, and Emma Muscarelle (collectively, the "Underlying Plaintiffs") based on Petrov's sexual abuse of the Underlying Plaintiffs over a No of years while they were students at Petrov Ballet.

2.     Based on this abuse, Underlying Plaintiffs initiated a series of underlying lawsuits (collectively, the "Underlying Actions") against the Underlying Defendants. MIC disclaimed coverage for the Underlying Actions, as all of the potentially applicable liability policies issued by MIC to Petrov Ballet preclude coverage for, *inter alia*, sexual molestation and abuse.

3.      The Underlying Actions were consolidated, and Petrov Ballet and the Underlying Plaintiffs entered into a consent judgment. (Ex. 2.) Therein, Petrov Ballet consented to a $30 million judgment against it, in exchange for the Underlying Plaintiffs' agreement that they will seek to recover the Judgment against MIC and not Petrov Ballet, its employees, or its agents. (Id.)

4.      MIC seeks a declaration that it does not owe coverage for the Judgment.

## PARTIES

5.      MIC is an Illinois corporation with its principal place of business in Virgina, and is authorized to do business in the State of New Jersey.

6.      Petrov Ballet was, or is, a New Jersey limited liability company with its principal place of business in New Jersey.

7.      Petrov is an interested party. He is an individual, owner and member of Petrov Ballet.

8.      Petrov is domiciled in, and a citizen, of New Jersey.

9.      Karen Bosch Petrov is an interested party. She is an individual, member and owner of Petrov Ballet.

10.     Karen Bosch Petrov is domiciled in, and a citizen of New Jersey.

11.     Petrov Ballet has its principal place of business and is domiciled and a citizen of New Jersey because its sole members, Petrov and Karen Petrov, are citizens of New Jersey.

12.     Susan Sorota may be an interested party. She is an individual who is domiciled in, and a citizen of New Jersey.

13.     Emma Muscarelle may be an interested party. She is an individual who is domiciled in, and a citizen of New Jersey.

14. Stephanie Buesser may be an interested party. She is an individual who is domiciled in, and a citizen of Washington, D.C.

15. Stephanie Sorota ("Sorota") may be an interested party. She is an individual who is domiciled in, and a citizen of Washington, D.C.

16. Cristina Tummillo may be an interested party. She is an individual who is domiciled in, and a citizen of New York.

17. Elizabeth Flynn may be an interested party. She is an individual who is domiciled in, and a citizen of Tennessee.

18. As plaintiffs in the Underlying Actions, Tummillo, Flynn, Buesser, Sorota, and Muscarelle are potentially interested parties that may be affected by the declarations sought in this action.

19. As defendants in the Underlying Actions, Petrov, Karen Bosch Petrov, and Susan Sorota are potentially interested parties that may be affected by the declarations sought in this action.

## **JURISDICTION AND VENUE**

20. There exists an actual and justiciable controversy between and among the parties concerning their respective rights and obligations under certain policies of insurance with respect to the Underlying Actions pursuant to 28 U.S.C. §2201 and Fed. R. Civ. P. 57.

21. The Underling Actions are now fully resolved and MIC seeks through this lawsuit a declaratory judgment that it does not owe coverage for said actions, including the Consent Judgment (defined hereinunder) entered therein.

22.    The Consent Judgment in the Underlying Actions has been entered in the amount of $30 million. As such, the amount in controversy in this action exceeds the value of $75,000, exclusive of interests and costs.

23.    Accordingly, this Court possesses subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(2) because Plaintiff and defendants are citizens of different states and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

24.    Venue is proper under 28 U.S.C. §1391, because the events at issue in the Underlying Actions took place in this district and Defendant Petrov Ballet operates a business located in this district.

## THE UNDERLYING LAWSUITS

25.    Each of the Underlying Actions arise out of the allege abuse and sexual abuse by Petrov of his students at Petrov Ballet.

26.    Each of the Underlying Actions include complaints that allege the following purported facts against the Underlying Defendants:

   a.    That Petrov was a dance/ballet teacher/instructor at Petrov Ballet.

   b.    That individual defendants were employees and/or agents of Petrov Ballet and/or Petrov and involved in the operation of Petrov Ballet and the hiring, admitting, assigning, retaining, and supervising of teachers and/or individuals, including Petrov.

   c.    That Petrov Ballet has access to and knowledge of information regarding the sexual misconduct of the teachers, dance instructors, employees, and/or agents, including knowledge of pedophilia and/or sexually abusive conduct of individuals within Petrov Ballet, and or the dance school, including Petrov.

   d.    That the defendants were acting by and through themselves and their agents, which include individuals over which they had the right to control.

   e.    That Petrov was acting as a teacher, founder, director, employee, agent, servant, and/or otherwise controlled by and for one or more of the defendants, including Petrov Ballet and the individual defendants.

    f.    That defendants failed to take appropriate actions to protect plaintiff against sexual harassment/abuse at the school, and that they "knew and/or had reason to know" that "Petrov[] engaged in [] sexual abuse  and/or inappropriate conduct with students[.]"

    g.    That defendant Petrov Ballet acted individually and through its employees all of which "acted with actual or apparent authority and all of whom aided in carrying out and/or permitted sexual harassment/abuse of the plaintiff."

    h.    That defendant Petrov Ballet "should have been aware of the misconduct and sexual harassment committed by Defendant Eugene Petrov[.]"

**A.  The Underlying Tummillo Action**

27.    On or about August 19, 2021, Cristina Tummillo filed an underlying action captioned, as amended, *Cristina Tummillo v. Petrov Ballet School, LLC; Eugene Petrov; Karen Bosch Petrov; Susan Sorota; Defendant Doe 1-10; Defendant Doe Institution 1-10*, Docket No. BER-L-005527-21, in the New Jersey Superior Court for Bergen County (the "Tummillo Action").

28.    Therein, Tummillo alleged that she was sexually abused from 2011 through 2018 by Petrov, who was the founder, owner, and/or employee of Petrov Ballet, while she was a student at Petrov Ballet. Based on this abuse, Tummillo brought causes of action for Negligence, Negligent Supervision, Negligent Hiring and Retention, Gross Negligence, Intentional Infliction of Emotional Distress, Breach of Fiduciary Duty, and Violation of New Jersey Law Against Discrimination (N.J.S.A. Section 10:5-1 *et seq*.).  She also brought a claim for punitive damages.

29.    On or about September 9, 2021, Petrov Ballet tendered the defense of the Tummillo Action to MIC.

30.    On or about May 9, 2024, Tummillo filed a Second Amended Complaint in the Tummillo Action. Therein, Tummillo added Karen Bosch Petrov and Susan Sorota as underlying defendants. She also replaced her prior cause of action for Intentional Infliction of Emotional

Distress with a cause of action for Emotional Distress and eliminated her claim for punitive damages.

**B.  The Underlying Flynn Action**

31.     On or about August 19, 2021, Elizabeth Flynn filed an underlying action captioned, as amended, *Elizabeth Flynn v. Petrov Ballet School, LLC; Eugene Petrov; Karen Bosch Petrov; Susan Sorota; Defendant Doe 1-10; Defendant Doe Institution 1-10*, Docket No. BER-L-005528-21, in the New Jersey Superior Court for Bergen County (the "Flynn Action").

32.     Therein, Flynn alleged that she was sexually abused from 2015 through 2018 by Petrov, who was the founder, owner, and/or employee of Petrov Ballet, while she was a student at Petrov Ballet. Based on this abuse, Flynn brought causes of action for Negligence, Negligent Supervision, Negligent Hiring and Retention, Gross Negligence, Intentional Infliction of Emotional Distress, Breach of Fiduciary Duty and Violation of New Jersey Law Against Discrimination.

33.     She also sought punitive damages.

34.     On or about September 9, 2021, Petrov Ballet tendered to MIC the defense of the Flynn Action.

35.     On or about May 9, 2024, Flynn filed a Second Amended Complaint in the Flynn Action. Therein, she added Karen Bosch Petrov and Susan Sorota as underlying defendants. She also replaced her cause of action for Intentional Infliction of Emotional Distress with a cause of action for Emotional Distress and eliminated her claim for punitive damages.

**C.  The Underlying Buesser Action**

36.     On or about September 28, 2021, Stephanie Buesser filed an underlying action captioned, as amended,  *Stephanie Buesser v. Petrov Ballet School, LLC; Eugene Petrov; Karen*

*Bosch Petrov; Susan Sorota; Defendant Doe 1-10; Defendant Doe Institution 1-10*, Docket No. BER-L-006450-21, in the New Jersey Superior Court for Bergen County (the "Buesser Action").

37.    Therein, Buesser alleged that she was sexually abused from 2012 through 2016 by Petrov, who was a teacher, instructor, and/or Artistic Director of Petrov Ballet.[1] Based on this abuse, Buesser brought causes of action for Negligence, Negligent Supervision, Negligent Hiring and Retention, Gross Negligence, Reckless Disregard Infliction of Emotional Distress, Breach of Fiduciary Duty, and Violation of New Jersey Law Against Discrimination.

38.    She also sought punitive damages.

39.    On or about December 6, 2023, Petrov Ballet tendered to MIC the defense of the Buesser Action.

40.    On or about May 9, 2024, Buesser filed an Amended Complaint. Therein, she added Susan Sorota as an underlying defendant; replaced her cause of action for Reckless Disregard Infliction of Emotional Distress with a cause of action for Emotional Distress; and eliminated her claim for punitive damages.

**D.  The Underlying Sorota Action**

41.    On or about September 28, 2021, Stephanie Sorota filed an underlying action captioned, as amended, *Stephanie Sorota v. Petrov Ballet School, LLC; Eugene Petrov; Karen Bosch Petrov; Susan Sorota; Defendant Doe 1-10; Defendant Doe Institution 1-10*, Docket No. BER-L-006451-21, in the New Jersey Superior Court for Bergen County (the "Sorota Action").

---

[1] The Complaint alleges that Petrov sexually abused Buesser on more than one hundred (100) occasions from 2012 to 2016. The abuse included inappropriate kissing, touching, fondling and/or groping of her breasts, buttocks and vaginal area, both over her clothing/costume, as well as skin-to-skin under her clothing, and the grinding of Petrov's erect penis against her body.

42.     Therein, Sorota alleged that she was sexually abused from 2012 through 2018 by Petrov, who was a teacher, instructor, and/or Artistic Director of Petrov Ballet.[2] Based on this abuse, Sorota brings causes of action for Negligence, Negligent Supervision, Negligent Hiring and Retention, Gross Negligence, Reckless Disregard Infliction of Emotional Distress, Breach of Fiduciary Duty, and Violation of New Jersey Law Against Discrimination (N.J.S.A. Section 10:5-1 *et seq*.). She also sought punitive damages.

43.     On or about December 28, 2023, Petrov Ballet tendered the Sorota Action to MIC.

44.     On or about May 9, 2024, Sorota filed an Amended Complaint. Therein, she added Susan Sorota as an underlying defendant; replaced her cause of action for Reckless Disregard Infliction of Emotional Distress with a cause of action for Emotional Distress; and eliminated her claim for punitive damages.

**E.  The Underlying Muscarelle Action**

45.     On or about October 26, 2021, Emma Muscarelle filed an underlying action captioned, as amended, *Emma Muscarelle v. Petrov Ballet School, LLC; Eugene Petrov; Karen Bosch Petrov; Susan Sorota; Defendant Doe 1-10; Defendant Doe Institution 1-10*, Docket No. BER-L-007009-21, in the New Jersey Superior Court for Bergen County (the "Muscarelle Action").

46.     Therein, Muscarelle alleged that she was physically and sexually abused[3] from 2017 through 2019 by Petrov, who was a teacher, instructor, and/or Artistic Director of Petrov

---

[2] The Complaint alleges that Petrov sexually abused Sorota on more than fifty (50) occasions from 2012 to 2018, while she was ages 14 to 20. The abuse included inappropriate kissing, touching, fondling and/or groping of her breasts, buttocks and vaginal area, both over her clothing/costume, as well as skin-to-skin under her clothing, and the grinding of Petrov's erect penis against her body.

[3] The abuse included inappropriate kissing, touching, fondling and/or groping of her breasts, buttocks and vaginal area, over her clothing/costume, and the grinding of Petrov's erect penis against her body. Muscarelle also alleges that, on or about March 23, 2019, Petrov verbally humiliated Muscarelle and abruptly put one hand on her collarbone and

Ballet. Based on this abuse, Muscarelle brought causes of action for Negligence, Negligent Supervision, Negligent Hiring and Retention, Gross Negligence, Reckless Disregard Infliction of Emotional Distress, Breach of Fiduciary Duty, and Violation of New Jersey Law Against Discrimination (NJSA Section 10:5-1 *et seq*.). She also brought a claim for punitive damages.

47.    On or about December 6, 2023, Petrov Ballet tendered to MIC the defense of the Muscarelle Action.

48.    On or about May 9, 2024, Muscarelle filed an Amended Complaint. Therein, she added Susan Sorota as an underlying defendant; replaced her cause of action for Reckless Disregard Infliction of Emotional Distress with a cause of action for Emotional Distress; and eliminated her claim for punitive damages.

### F. Consolidation of the Underlying Actions, Consent Judgment and Entry of Judgment

49.    On January 13, 2022, all five of the underlying actions were consolidated under Docket No. BER-L-005527-21 ("Consolidated Action").

50.    On or about September 26, 2024, each of the Underlying Defendants and the Underlying Plaintiffs entered into a Consent Judgment, wherein defendants consented to a Judgement to be entered against Petrov Ballet and in plaintiffs' favor in the amount of $30 million, plus interest, costs, and disbursements ("Consent Judgment"). (Ex. 2.)

51.    Included with the Consent Judgment is each Underlying Plaintiff's "Narrative Summary of Sexual Abuse" and "Impact Statement." (Id.)

---

his other hand on her back and pushed her into an arched position, holding for approximately 15 seconds, causing her to fall to her knees in pain.

52.     On September 27, 2024, the Court in the Consolidated Action entered an Order for Judgment, entering judgment pursuant to the parties' stipulated Consent Judgment in the Underlying Plaintiffs' favor and against Petrov Ballet ("Order for Judgment").  (Ex. 1.)

53.     The Order for Judgment was prepared by counsel for the Underlying Plaintiffs.

54.     As provided in the Order for Judgment and the Consent Judgment, the Underlying Plaintiffs cannot collect on the Consent Judgment from Petrov Ballet or its employees, agents, and/or volunteers, and will only seek its recovery from MIC pursuant to the terms and conditions of the Consent Judgment and Order for Judgment.

55.     The Order for Judgment states that "such collection shall be pursuant to the terms and conditions of the Consent Judgment and Entry of Judgment under Griggs v. Bertram, 88 N.J. 347 [] (1982), entered into between the Parties." (Id.)

56.     The Order for Judgment also states, in a handwritten note by Judge John O'Dwyer, P.J. Cv., "[t]he Court makes no determination as to the reasonableness of the settlement." (Ex. 1.)

**THE MIC POLICIES**

57.     Based on the allegations in the Underlying Actions, Petrov sexually abused the Underlying Plaintiffs, collectively, from 2011 to 2019.

58.     For that time period, MIC issued the following ten commercial general liability primary policies (collectively, the "Primary Policies") to Petrov Ballet, as the Named Insured:

1.  Policy No. 8502HFXXXXXX-2, for a policy period from October 1, 2010 to October 1, 2011 ("2010-2011 Policy");

2.  Policy No. 8502HFXXXXXX-3, for a policy period from October 1, 2011 to October 1, 2012 ("2011-2012 Policy");

3.  Policy No. 8502HFXXXXXX-4, for a policy period from October 1, 2012 to October 1, 2013 ("2012-2013 Policy");

4.  Policy No. 8502JFXXXXXX-5, for a policy period from October 1, 2013 to October 1, 2014 ("2013-2014 Policy");

5.  Policy No. 8502HFXXXXXX-6, for a policy period from October 1, 2014 to October 1, 2015 ("2014-2015 Policy");

6.  Policy No. 8502HFXXXXXX-7, for a policy period from October 1, 2015 to October 1, 2016 ("2015-2016 Policy");

7.  Policy No. SFPXXX-01, for a policy period from October 1, 2016 to October 1, 2017 ("2016-2017 Policy");

8.  Policy No. SFPXXX-02, for a policy period from October 1, 2017 to October 1, 2018 ("2017-2018 Policy");

9.  Policy No. SFPXXX-03, for a policy period from October 1, 2018 to October 1, 2019 ("2018-2019 Policy"); and

10. Policy No. SFPXXX-04, for a policy period from October 1, 2019 to October 1, 2020 ("2019-2020 Policy").

59.    During that time, MIC also issued ten commercial umbrella policies to Petrov Ballet (collectively, the "Umbrella Policies") as follows:[4]

i.    Policy no. 4602HFXXXXXX-2 for a policy period from October 1, 2010 to October 1, 2011 ("2010-2011 Umbrella Policy");

ii.   Policy no. 4602HFXXXXXX-3 for a policy period from October 1, 2011 to October 1, 2012 ("2011-2012 Umbrella Policy");

iii.  Policy no. 4602HFXXXXXX-4 for a policy period from October 1, 2012 to October 1, 2013 ("2012-2013 Umbrella Policy");

iv.   Policy no. 4602HFXXXXXX-5 for a policy period from October 1, 2013 to October 1, 2014 ("2013-2014 Umbrella Policy");

v.    Policy no. 4602HFXXXXXX-6 for a policy period from October 1, 2014 to October 1, 2015 ("2014-2015 Umbrella Policy");

vi.   Policy no. 4602HFXXXXXX-7 for a policy period from October 1, 2015 to October 1, 2016 ("2015-2016 Umbrella Policy");

vii.  Policy no. SFUXXX-01 for a policy period from October 1, 2016 to October 1, 2017 ("2016-2017 Umbrella Policy");

---

[4] Collectively, the Primary Policies and the Umbrella Policies are referred to as the "MIC Policies."

viii.   Policy no. SFUXXX-02 for a policy period from October 1, 2017 to October 1, 2018 ("2017-2018 Umbrella Policy");

ix.   Policy no. SFUXXX-03 for a policy period from October 1, 2018 to October 1, 2019 ("2018-2019 Umbrella Policy"); and

x.   Policy no. SFUXXX-04 for a policy period from October 1, 2019 to October 1, 2020 ("2019-2020 Umbrella Policy").

**A.   The Primary Policies:**

60.   The Primary Policies, under policy forms "CG0001 12 07" or "CG0001 04 13," each contain the following insuring agreement:

*SECTION I - COVERAGES*
*COVERAGE A -BODILY INJURY AND PROPERTY DAMAGE LIABILITY*

*1. Insuring Agreement*

>   *a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" Seeking those damages. However, we will have no duty to defend the insured against any "suit" Seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.*
> ***
>   *b. This insurance applies to "bodily injury" and "property damage" only if:*
>
>>   *(1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";*
>>
>>   *(2) The "bodily injury" or "property damage" occurs during the policy period;*
>>
>>   *(3) Prior to the policy period, no insured listed under Paragraph 1. of Section II – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the*

> *policy period will be deemed to have been known prior top the policy period.*

61.    The Primary Policies define "occurrence" to mean "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

62.    The Primary Policies contain the following exclusion:

**2.    *Exclusions***

***a. Expected or Intended Injury***

*"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting/ram the use of reasonable force to protect persons or property.*

63.    The 2010-2011, 2011-2012, 2012-2013, 2013-2014, and 2014-2015 Primary Policies contain the following exclusion (Form MGL117 05 09):

***SEXUAL ABUSE OR SEXUAL MOLESTATION EXCLUSION***

*The following exclusion is added to apply to Paragraph 2., Exclusions of COVERAGE A. – BODILY INJURY AND PROPERTY DAMAGE LIABILITY (Section I - Coverages), and Paragraph 2., Exclusions of COVERAGE B. - PERSONAL AND ADVERTISING INJURY (Section I - Coverages), and COVERAGE C. MEDICAL PAYMENTS:*

*This insurance does not apply to "bodily injury", "property damage", or "personal and advertising injury" arising out of:*

***1.*** *The actual or threatened sexual abuse or sexual molestation by anyone of any person in the care, custody, or control of any insured, or*

***2.*** *The negligent:*
    *a. Employment;*
    *b. Investigation;*
    *c. Supervision;*
    *d. Reporting to the proper authorities, or failure to so report; or*
    *e. Retention*

    *of a person for whom any insured is or ever was legally responsible and whose conduct would be excluded by paragraph **1.** above.*

(Ex. 3.)

64.     The 2015-2016, 2016-2017, 2017-2018, 2018-2019, and 2019-2020 Primary

Policies contain the following exclusion (form CG 21 46 07 98):

> *The following exclusion is added to Paragraph **2., Exclusions of Section** I -*
> ***Coverage A - Bodily Injury And Property Damage Liability** and **Paragraph 2.,***
> ***Exclusions of Section** I - Coverage **B** – **Personal And Advertising Injury Liability:***
>
> *This insurance does not apply to "bodily injury", "property damage" or "personal*
> *and advertising injury" arising out of*
>
> ***1.** The actual or threatened abuse or molestation by anyone of any person while in*
> *the care, custody or control of any insured, or*
>
> ***2.** The negligent:*
>
>> ***a.** Employment;*
>> ***b.** Investigation;*
>> *c. Supervision;*
>> ***d.** Reporting to the proper authorities, or failure to so report; or*
>> ***e.** Retention;*
>>
>> *of a person for whom any insured is or ever was legally responsible and*
>> *whose conduct would be excluded by Paragraph **1.** above.*

(Ex. 4.)

65.     The 2016-2017, 2017-2018, 2018-2019, and 2019-2020 Primary Policies also

contain a Miscellaneous Professional Liability Endorsement, which contains the following

relevant provisions:

> ***MISCELLANEOUS PROFESSIONAL LIABILITY***
>
> ***1. Insuring Agreement***
>
> ***a.** We will pay those sums that the insured becomes legally obligated to pay as*
> *"damages" because of injury arising out of a "wrongful act" of the insured or of*
> *any other person for whose acts the insured is legally liable, to which this insurance*
> *applies. We will have the right and the duty to defend the insured against any "suit"*
> *Seeking those "damages". However, we will have no duty to defend the insured*
> *against any "suit" Seeking "damages" to which this insurance does not apply. We*
> *may, at our discretion, investigate any report of a "wrongful act" and settle any*
> *claim or "suit" that may result. But:*

*(1)  The amount we will pay for "damages" is limited as described in Paragraph **D.** of this endorsement; and*

*(2)  Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements.*

*No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments - Coverages **A, B** And **Miscellaneous Professional Liability.***

***b.** This insurance applies to injury only if:*

*(1)  The injury is caused by a "wrongful act" that takes place in the "coverage territory";*

*(2)  The injury occurs during the policy period; and*

*(3)  Prior to the policy period, no insured listed under Paragraph **1.** of Section II- Who Is An Insured and no "employee" authorized by you to give or receive notice of a "wrongful act" or claim, knew that the injury had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the injury occurred, then any continuation, change or resumption of such injury during or after the policy period will be deemed to have been known prior to the policy period.*

***c.** Injury which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.** of Section **II - Who Is An Insured** or any "employee" authorized by you to give or receive notice of a "wrongful act" or claim, includes any continuation, change or resumption of that injury after the end of the policy period.*

***

***2. Exclusions***

*This insurance does not apply to:*

***

***d. Discrimination***

*Discrimination because of age, race creed, color, sex, disability, national origin, material status or sexual preference.*

***

***j. Fines Or Penalties***

*Fines or non-compensatory penalties, or any exemplary or punitive "damages" awarded in any legal proceeding if the legal proceeding is based in whole or in part upon any professional service. Exemplary or punitive "damages" are only excluded in jurisdictions where allowable by statute.*

*\*\*\**

**k. Fraud**
*Any dishonest, fraudulent or criminal act or omission by or at the direction of any insured.*

*\*\*\**

**o. Molestation, Sexual Misconduct Or Abuse**

*Liability resulting from any actual, threatened, or alleged molestation, sexual misconduct or abuse of any type. This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "wrongful act" which caused the injury involved the rendering of or failure to render the professional services of your operations.*

(Ex. 5.)

**B.    Relevant Provisions of The Umbrella Policies:**

66.    The Umbrella Policies contain the following insuring agreement:

***SECTION II - UMBRELLA LIABILITY COVERAGE***
***COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY***

***1. Insuring Agreement***

***a.*** *We will pay on behalf of the insured the "ultimate net loss" in excess of the "retained limit" because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" Seeking those damages when the "underlying insurance" does not provide coverage or the limits of "underlying insurance" have been exhausted. When we have no duty to defend, we will have the right to defend, or to participate in the defense of, the insured against any other "suit" Seeking damages to which this insurance may apply. However, we will have no duty to defend the insured against any "suit" Seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" that may involve this insurance and settle any claim or "suit" for which we have the duty to defend that may result.*

67.    In addition, the Umbrella Policies contain the following Abuse and Molestation

exclusion (Ex. 6):

***ABUSE AND MOLESTATION EXCLUSION***
*The following exclusion is added:*

*This insurance does not apply to:*
***(1)*** *The actual or threatened abuse or molestation of any person by anyone at any time;*

***(2)*** *The negligent:*
> ***(a)*** *Employment;*
> ***(b)*** *Investigation;*
> ***(c)*** *Supervision;*
> ***(d)*** *Reporting to the proper authorities, or failure to report; or*
> ***(e)*** *Retention;*

*of a person for whom any insured is or ever was legally responsible and whose conduct would be excluded by Paragraph **(1)** above. This exclusion applies to all such allegations even if proven to be untrue.*

## MIC'S DISCLAIMERS

68.    By letter dated November 1, 2021, MIC disclaimed coverage for the Tummillo Action. As set forth in that letter, MIC disclaimed coverage under the relevant MIC Policies based on, inter alia, the abuse and molestation exclusions contained in the respective policies.

69.    By letter also dated November 1, 2021, MIC disclaimed coverage for the Flynn Action under the relevant MIC Policies based on, inter alia, the abuse and molestation exclusions contained in the respective policies.

70.    By letter dated January 18, 2024, MIC disclaimed coverage for the Buesser Action under the relevant MIC Policies based on, inter alia, the abuse and molestation exclusions contained in the respective policies.

71.    By letter also dated January 18, 2024, MIC disclaimed coverage for the Sorota Action under the relevant MIC Policies based on, inter alia, the abuse and molestation exclusions contained in the respective policies.

72.     Finally, by letter dated February 15, 2024, MIC disclaimed coverage to Petrov Ballet for the Muscarelle Action under the relevant MIC Policies based on, inter alia, the abuse and molestation exclusions contained in the respective policies.

73.     On or about February 16, 2024, MIC received a letter from Underlying Plaintiffs' counsel, demanding $7,000,000.

74.     MIC responded to counsel by letter dated February 26, 2024, maintaining its disclaimer and in particular its reliance on the applicable abuse and molestation exclusions.

75.     Despite, however, the clear bases of non-coverage outlined in these letters, Petrov Ballet  and the Underlying Plaintiffs entered into the Consent Judgment, whereby the Underlying Plaintiffs agree to only seek the $30 million Judgment from MIC.

76.     As such, there is a real, substantial, and justiciable issue and controversy between the parties hereto with respect to the availability of liability coverage under the 2010-2019 Primary and Umbrella Policies for the claims asserted in the Underlying Actions and the Consent Judgment.

77.     A judicial determination and a declaration of the rights and obligations of the parties is necessary and appropriate at this time to resolve this current dispute.

**FIRST CAUSE OF ACTION**
**AS AGAINST DEFENDANTS**
**(Declaratory Judgment of No Coverage – Abuse and Molestation Exclusion)**

78.     MIC repeats and realleges each and every allegation set forth in the preceding paragraphs  1 through 77 as if fully set forth herein.

79.     As set forth above, the MIC Policies contain exclusions in each coverage part that preclude coverage for the abuse and molestation, including negligent employment, investigation, supervision, reporting and/or retention.

80.     The Underlying Actions allege that Petrov committed sexual assaults on each of the Underlying Plaintiffs.

81.     The Underlying Actions allege that each of the Underlying Defendants (other than Petrov) and their acts "created and/or permitted the opportunity" for Petrov to commit sexual abuses of the Underlying Plaintiffs.

82.     The Underlying Actions allege that the Petrov Ballet negligently investigated, hired, and/or supervised Eugene, which resulted in his sexual assaults on the student plaintiffs.

83.     The Underlying Actions allege that each of the Underlying Defendants "were empowered to supervise and control all teachers, employees and/or agents within Petrov Ballet School, LLC, as well as the students[.]"

84.     The claims against Petrov Ballet in the Underlying Actions arise out of abuse and molestation by Petrov, an insured.

85.     As a result, MIC is entitled to a declaration that it does not owe coverage to defendants with respect to any of the claims in the Underlying Actions as the abuse and molestation exclusions preclude coverage under the MIC Policies.

86.     Defendants disagree with MIC's disclaimer and in particular, its reliance on the abuse and molestation exclusions in the MIC Policies.

87.     Accordingly, there is a present justiciable controversy regarding the insurance coverage available for the Consent Judgment or Order for Judgment entered in the Underlying Actions.

## SECOND CAUSE OF ACTION
## AS AGAINST DEFENDANTS
### (Declaratory Judgment of No Coverage – Expended or Intended Exclusion)

88.    MIC repeats and realleges each and every allegation set forth in the preceding paragraphs 1 through 77 as if fully set forth herein.

89.    As set forth above, the MIC Policies contain exclusions in each coverage part that preclude coverage for the injuries expected or intended injury.

90.    The Underlying Actions allege that Petrov committed abuse and sexual assaults on each of the Underlying Plaintiffs.

91.    The Underlying Actions allege that each of the defendants and their acts "created and/or permitted the opportunity" for Petrov to commit such sexual abuse of the Underlying Plaintiffs.

92.    The Underlying Actions allege that the Petrov Ballet negligently investigated, hired, and/or supervised Petrov, which resulted in his sexual assaults on the student plaintiffs.

93.    The Underlying Actions allege that each of the Underlying Defendants were empowered to supervise and control all teachers, employees and/or agents within Petrov Ballet School, LLC, including Petrov.

94.    The claims against each Defendant in the Underlying Actions arise out of abuse and molestation by Petrov, an insured and owner of Petrov Ballet.

95.    As a result, MIC is entitled to a declaration that the expected or intended injury exclusions contained in the MIC Policies fully preclude coverage under the MIC Policies.

96.    Defendants disagree with MIC's disclaimer and in particular, its reliance on the expected or intended exclusions in the MIC Policies.

97.    Accordingly, there is a present justiciable controversy regarding the insurance coverage available for the Consent Judgment or Order for Judgment entered in the Underlying Actions.

## THIRD CAUSE OF ACTION
## AS AGAINST DEFENDANTS
### (Declaratory Judgment of No Coverage – No Occurrence)

98.    MIC repeats and realleges each and every allegation set forth in the preceding paragraphs 1 through 77 as if fully set forth herein.

99.    As set forth above, the MIC Policies' Insuring Agreement limits coverage to "bodily injury" to be caused by an "occurrence" during the policy period.

100.    The Underlying Actions allege that Petrov committed sexual assaults on each of the Underlying Plaintiffs.

101.    The Underlying Actions allege that each of the Underlying Defendants (except Petrov) and their acts "created and/or permitted the opportunity" for Petrov to commit sexual abuses of the Underlying Plaintiffs.

102.    The Underlying Actions allege that Underlying Defendants "knew and/or had reason to know" that "Petrov[] engaged in [] sexual abuse and/or inappropriate conduct with students[.]"

103.    As a result, MIC is entitled to a declaration that it does not owe coverage to defendants with respect to any of the claims in the Underlying Actions, as there is no claim for damages because of an "occurrence" as required by the MIC Policies.

104.    Defendants disagree with MIC's disclaimer.

105.    Accordingly, there is a present justiciable controversy regarding the insurance coverage available for the Consent Judgment or Order for Judgment entered in the Underlying Actions.

**FOURTH CAUSE OF ACTION**
**AS AGAINST DEFENDANTS**
**(Declaratory Judgment of No Coverage – Prior Knowledge)**

106.    MIC repeats and realleges each and every allegation set forth in the preceding paragraphs 1 through 77 as if fully set forth herein.

107.    As set forth above, the MIC Policies' Insuring Agreement limits coverage to "bodily injury" not known prior to the policy period by an insured, including an employee or member of the insured, authorized by Petrov Ballet to give or receive notice of an "occurrence" or claim.

108.    Petrov is a member of Petrov Ballet.

109.    Petrov and others (as specified in the policy) knew prior to each of the policy periods of his sexual abuse, assaults and molestations.

110.    As a result, MIC is entitled to a declaration that it does not owe coverage to defendants with respect to any of the claims in the Underlying Actions, in which Petrov or others knew prior to the policy periods of his conduct.

111.    Defendants disagree with MIC's disclaimer.

112.    Accordingly, there is a present justiciable controversy regarding the insurance coverage available for the Consent Judgment or Order for Judgment entered in the Underlying Actions.

**FIFTH CAUSE OF ACTION**
**AS AGAINST DEFENDANTS**
**(Declaratory Judgment of No Coverage – Settlement is Unreasonable)**

113.    MIC repeats and realleges each and every allegation set forth in the preceding paragraphs 1 through 77, as if fully set forth herein.

114.    The Consent Judgment and Order of Judgment is for an amount that is unreasonable and/or unallocated between plaintiffs, injuries, and claims.

115.    Pursuant to *Griggs v. Bertram*, 88 N.J. 347, 368 (1982), it is the insureds and/or Underlying Plaintiffs burden to establish the reasonableness of the Consent Judgment.

116.    Upon information and belief, the Consent Judgment is unreasonable and/or improper as it does not allocate any damages between the Underlying Defendants, Underlying Plaintiffs and/or injuries or claims.

117.    As a result, MIC is entitled to a declaration that it does not owe coverage to the defendants with respect to any of the claims in the Underlying Actions or for the Consent Judgment.

118.    Defendants disagree with MIC's positions.

119.    Accordingly, there is a present justiciable controversy regarding the insurance coverage available for the Consent Judgment or Order for Judgment entered in the Underlying Actions.

**WHEREFORE**, MIC prays for relief as follows:

1.    Declaratory Judgment that no coverage is owed for defendants for the Underlying Actions, including defense and indemnity as to the Consent Judgment and/or Order of Judgment;

2.    For such other and further relief as this Court may deem just and equitable.

## DESIGNATION OF TRIAL ATTORNEY

April T. Villaverde is hereby designated as trial counsel on behalf of MIC.

## CERTIFICATION REGARDING RELATED PROCEEDINGS

I hereby certify that the matter in controversy is not the subject of any other action pending in any other court or of a pending arbitration proceeding.

Respectfully submitted,

*/s/ April T. Villaverde*
April Villaverde, Esq. (Bar No.: 028612006)
HINSHAW & CULBERTSON LLP
343 Thornall Street, Suite 640
Edison, NJ 08873
Phone: (908) 374-0322
Email:  avillaverde@hinshawlaw.com
*Attorneys for Defendant Markel Insurance*
*Company*

Dated:   November 7, 2024